**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER**


SANDRA K. NOLAN,               )

              Plaintiff      )

          v.              )          No.  4:04-cv-37

MILLENNIUM INDUSTRIES, a/k/a   )
COMMONWEALTH ALUMINUM
TUBE ENTERPRISES, LLC,       )

             Defendant   )


**<u>MEMORANDUM OPINION</u>**


        This action to set aside an alleged fraudulent conveyance was originally filed in the Chancery Court of Grundy County, Tennessee, and removed to this court on the basis of diversity of citizenship.  Plaintiff Sandra K. Nolan contends that her former employer, Millennium Industries (Millennium) transferred the bulk of its assets to Commonwealth Aluminum Tube Enterprises, LLC (Commonwealth) in order to avoid payment of a default judgment which she obtained against Millennium. Currently pending is defendant Commonwealth's motion for summary judgment [Court File #25].  Because plaintiff has failed to come forward with evidence upon

which a jury could reasonably find that the transfer of assets was fraudulent, the motion will be granted and this action dismissed.

I.

**Factual Background**

The following facts are considered in the light most favorable to the plaintiff.

Plaintiff's former employer Millennium manufactured and sold "aluminum welded manufactured products" such as aluminum chairs. Millennium was a customer of Commonwealth and over the years incurred a debt of approximately $1 million to Commonwealth.

On March 23, 2001, plaintiff filed a lawsuit against Millennium in the Circuit Court of Grundy County alleging sexual harassment, retaliation, and retaliatory discharge. That action was removed to this court on April 25, 2001, and given civil docket number 4:01-cv-38. For awhile, Millennium defended that lawsuit but on November 30, 2001, Millennium's counsel withdrew following Millennium's failure to pay its counsel. On April 3, 2002, default was entered in favor of plaintiff against Millennium in case number 4:01-cv-38.

On September 24, 2001, Millennium had entered into an "asset purchase agreement" with Commonwealth, which was one of its largest creditors, in which Millennium transferred a large portion of its assets to Commonwealth in exchange for $750,000 plus an agreement to forebear on Millennium's approximate $1 million debt to Commonwealth.

On April 3, 2002, default judgment was entered in case number 4:01-cv-38 against Millennium in the amount of $150,000. Fearing that plaintiff might seek to hold it liable as a successor corporation to Millennium, Commonwealth moved to intervene in case number 4:01-cv-38 on May 17, 2002, but that motion was denied. Subsequently, plaintiff filed the instant lawsuit in the Chancery Court of Grundy County to set aside the asset purchase agreement as an alleged fraudulent conveyance.

The facts surrounding the execution of the asset purchase agreement are as follows. Millennium had been a customer of Commonwealth since 1987, purchasing aluminum tubing and aluminum coil, and by the summer of 2001 owed Commonwealth $1 million. At that time, makers of folding aluminum furniture such as Millennium were experiencing financial difficulties as Chinese manufacturers had come to Wal-Mart and other large retailers with the "chair in a bag" product at prices that the manufacturers of aluminum furniture could not match. In dire financial

straits, Millennium approached Commonwealth about entering into a partnership or some sort of equity arrangement.

After negotiations, the asset purchase agreement was entered into and structured so that Commonwealth would pay $750,000 for (1) the equipment, raw material and inventory at a manufacturing plant in Pelham, Tennessee, and for the raw material and inventory at a tube mill and manufacturing plant in San Joaquin, California; (2) customer lists; and (3) the name, Millennium Industries, Inc. Commonwealth also agreed to forebear in the collection of the $1 million of debt in the asset purchase agreement, which provided as follows:

> 2.4 **Forbearance.** Seller is indebted to Buyer in the approximate amount of $1 million (the Indebtedness), provided, however, that Buyer shall be entitled to assert the balance of the amount of the Indebtedness in the event of any threatened or actual litigation commenced against Buyer, or in the event of a bankruptcy filing by the Seller.

Commonwealth did not purchase the accounts receivable, an office in Fort Myers, Florida, the manufacturing plant itself in Pelham, or the two mill and manufacturing plants in San Joaquin. Also under the terms of the asset purchase agreement, Commonwealth did not assume the liabilities of Millennium.

Of the $750,000 in new money, $250,000 of new money went to one of Millennium's creditors, FINOVA, which was owed approximately $1 million and which had a lien on Millennium's assets. Deductions were made for miscellaneous bills paid in the weeks before the closing in the amount of $24,442.69 and $10,000 for Millennium's attorney. The remainder of the money went to counsel for Millennium, who was apparently trying to settle with Millennium's other creditors.

The former owners of Millennium formed a company titled Millennium 3000, which was to market the products which were now being made by Commonwealth. In that way, Commonwealth hoped to take advantage of the former owner's customer contacts. An agreement was signed requiring Millennium to pay off the $1 million in debt. That arrangement was not successful, and six months later Commonwealth terminated the relationship and was sued by Millennium 3000. The debt of $1 million was never repaid.

Commonwealth also entered into an agreement that it would collect the accounts receivable for FINOVA. For this service, which Commonwealth was not obligated to undertake, it was to receive a commission of 5% of the first $750,000 and larger commissions on additional amounts. The accounts receivable were not sufficient to pay FINOVA its debt. It sued the former owners based upon their personal guaranties and obtained a judgment of $1,069,519.85.

There is disputed evidence with regard to the exact date on which Commonwealth had actual knowledge of the prior lawsuit filed by the plaintiff against Millennium. For purposes of this motion, the court assumes that Commonwealth had knowledge of the pendency of the lawsuit against Millennium at the time the asset purchase agreement was entered into on September 24, 2001.

As indicated above, Commonwealth agreed to pay $750,000 for the corporate name, customer list, and the equipment, inventory and raw materials at the two plants in Pelham, Tennessee, and San Joaquin, California. In order to obtain a value for the equipment, inventory and raw materials at the Pelham Plant, employees researched the historical cost of the equipment and it was found to be $428,700 and eight years old. Robert Wright and another employee had valued the assets at the Pelham and San Joaquin as a going concern, the fair market value, and not their liquidation value. Ultimately, the inventory and raw material in San Joaquin, California were valued at $200,000. The remaining $550,000 was allocated to the corporate name, customer lists, and the equipment, raw material and inventory at the Pelham Plant.

It is undisputed that to Commonwealth's knowledge, approximately $500,000 of the new money that it paid to Millennium was paid to an attorney apparently for distribution to creditors. There is no evidence that Commonwealth

had any knowledge of why plaintiff was not included in the group of creditors with whom some settlement may have been made by that attorney.

## II.

Pursuant to Rule 56, summary judgment shall be rendered when requested if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judgment to show the court that, under uncontradicted facts, the moving party is entitled to judgment as a matter of law. Summary judgment is intended to provide a quick, inexpensive means of resolving issues as to which there is no dispute regarding the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the motion. However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment." *Id.* Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which the party will bear the burden of proof at trial. *Catrett*, 477 U.S. at 322.

III.

***Analysis***

A conveyance is considered fraudulent in Tennessee if it is made "without a fair consideration, leaving the grantor insolvent; or ... made with actual intent to hinder, delay or defraud creditors." *Hicks v. Whiting*, 149 Tenn. 411, 444, 258 S.W.2d 784, 794 (1924).

Tennessee has adopted the Uniform Fraudulent Transfer Act which provides as follows:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1)     with actual intent to hinder, delay, or defraud any creditor of the debtor; or

    (2)  without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

      (A)  was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;  or

      (B)  intended to incur, or believed or reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as they became due.

T.C.A. § 66-3-305(a).  The Act goes on to provide as follows:

    A transfer or obligation is not voidable under § 66-3-305(a)(1) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee.

T.C.A. § 66-3-309.


    In order to prove that the conveyance was fraudulent, plaintiff must be able to show, by a preponderance of the evidence, that Millennium acted with actual intent to defraud its creditors.  *United States v. Kerr*, 470 Fed. Supp. 278 (E.D. Tenn. 1978).  In determining actual intent, the Tennessee Fraudulent Conveyance Act allows consideration to be given, among other factors, to whether:

    (1)  the transfer or obligation was to an insider;

(2)	the debtor retained possession or control of the property transferred after the transfer;

(3)	the  transfer or obligation was disclosed or concealed;

(4)	before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5)	the transfer was of substantially all the debtor's assets;

(6)	the debtor absconded;

(7)	the debtor removed or concealed assets;

(8)	the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9)	the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10)	the transfer occurred shortly before or shortly after a substantial debt was incurred;

(11)	the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

T.C.A. § 66-3-306(b).


Upon consideration of the above factors, the court finds that there is not sufficient evidence upon which a reasonable jury could find that the conveyance of assets in this case was fraudulent.  First, the evidence shows that there was fair

consideration given for the assets of the debtor and the assets were not "substantially all" of the debtor's assets. Second, the transfer was not to an insider and the debtor did not retain possession or control of the property transferred. There is no evidence of any attempt to conceal the transfer or by the debtor to remove or conceal assets. The value of the consideration, including the forbearance, was reasonably equivalent to the value of the assets transferred. Approximately $250,000 of the "new money" was transferred directly to FINOVA, which was one of Millennium's largest creditors. There is no dispute that approximately $500,000 of the "new money" was transferred to Millennium's attorney to use in payment of Millennium's other creditors. There is no evidence in the record why Millennium's attorney did not use some of this money to attempt to settle plaintiff's claim. Rather, the evidence of record points to the conclusion that Millennium was simply a corporation in serious financial difficulty which attempted to work out a payment arrangement with its two largest creditors, Commonwealth and FINOVA. There is insufficient evidence in the record for a reasonable jury to conclude that Millennium and Commonwealth engaged in this transaction in order to avoid the debt owed to Ms. Nolan, to whom Millennium owed apparently one of its smaller debts.

The court notes that there is no evidence that if Millennium had simply been liquidated at the time plaintiff obtained her judgment against it plaintiff would have been able to recover her judgment debt. Rather, it appears that prior secured

creditors had debts that would have taken the proceeds of all of Millennium's liquidated assets.

IV.

### *Conclusion*

In light of the foregoing, defendant's motion for summary judgment [Court File #25] will be granted and this action dismissed.

Order accordingly.

_____*s/  James H. Jarvis*_____
UNITED STATES DISTRICT JUDGE
